Good morning, Your Honors. My name is Jinxuan Li, and I represent the Dixing Court. In this case, the immigration judge denied my client's application for asylum because of his adverse credibility finding. According to the government, the immigration judge identified two reasons to support his adverse credibility finding, namely petitioner's testimony regarding the number of visits made by the family planning officials to his home to ask his wife to have an IUD insertion, and second, the reason why his wife did not go into hiding while she was pregnant with their second child. So the issue before this court is that whether or not these two reasons, considered either individually or collectively, constitute substantial evidence to support the immigration judge's adverse credibility finding. And we submit to the court that these two reasons do not provide the immigration judge sufficient grounds to make a finding that my client is not a credible witness. As to the number of visits to petitioner's home made by birth control officials, petitioner did testify that at one time that every two to three days or so, there would come over to ask my wife for an IUD insertion. Petitioner, however, never specified the length of the time during which the officials made visits with such a frequency. But the IGA, however, speculated that the period to start at the birth of So therefore, the immigration judge came to an impossible conclusion that the birth control officials made over 200 visits to petitioner's home. Let's assume that some of what the IGA said is kind of silly, like the thing about the 200 visits. I mean, he didn't say that. He still adequate reasons in the record, other than some of the things that the IGA relied on. What do we do then? We remand? We grant? What do we do? Well, at this point, in a minimum, the case should be remanded because the court is left to wonder whether or not, without this reason, whether or not the IGA would still reach the same conclusion. Because this is a case, as long as there's one reason, that's good enough. But there's a non-ban case pending now that may involve that issue. I mean, our case law says as long as there's one good reason, that's good enough, doesn't it? The remaining reason in this case, Your Honor, is not a valid ground either. Especially the second reason provided by the IGA to support his adverse predisposition finding relates to the reason why Padena's wife did not go into hiding while she discovered she was pregnant with a second child. And it's well settled in this circuit that what a person would likely do or would likely not do is speculation. But that wasn't really it. The problem was that when he asked that question, your client said a few contradictory, arguably contradictory things. I mean, he said in his declaration that he was preparing to leave China. Then he said, but he couldn't go anywhere. He couldn't go anyplace else because he'd never left his town. And then he said that he lived in an isolated area. And then he said, well, he really lived 100 meters from people. So there seemed to be some confusion about that. I think that the confusion probably is a result of cultural confusion, misunderstanding. The court is well aware that China is a heavily populated country. Maybe a house that is 100 meters away from the other house is considered very isolated in China. And I think that reason alone should not give the IGA sufficient ground to find my client to be an incredible witness. Where does that leave us? Suppose that we were to say, well, we can't say that the record would compel a finding of credibility here. So we're going to China, I suppose, would then be what disbelieved. Was there any other proof of that besides his testimony? There's no documentary evidence in record to support that. Well, is that then the result? If he becomes incredible, there just is no evidence of any past persecution and there's no evidence of any. Of course, there's no evidence that the issue is credibility. Yes. I believe the only issue before this court is whether or not. Are there any photographs in the record of a child or his wife or anything like that? Yes. There are photographs showing that the wife and son and as well as the marriage registration form. I thought that there were some allusion to a marriage registration form like much later. I may be confusing the cases. It's possible on page one hundred twenty three. That's the Chinese version. And then one hundred twenty four. It's the English translation. It's entitled Marriage Registration Application for which shows that the petitioner's identity and that he was in the process of getting married. And that was when? In nineteen eighty eight. But then there wasn't some reference to a marriage registration form in two thousand two. No, not that there was some reference somewhere in the record to that. Maybe I'm not that I'm aware of the immigration judge also had some concerns with regard to the identification identity, I should say, of your client. I think that also shows that the immigration judge just acted irrationally when he questioned the respondent's petitioner's identity because submitted into record is a copy of his passport. But I'm looking at page forty two of the excerpt of record and the immigration judge basically says that there's purportedly a copy of his passport, but it's not clear. And the immigration judge can't tell from the examination that actually pertains to the respondent, which I read to mean I'm looking at the picture that's photocopied. I can't even tell that it's the same person. And then when he asked him, you know, you have the original, the response was, well, I left the documents at home. Why isn't that a legitimate reason why they might question his true identity? OK, if let's assume the idea is legitimate in his concern over petitioner's identity, I think that the proper remedy would be because petitioner live on Guam. So assuming the Guam is not a big place and he can easily go to his house and fetch the passport to show it to the court. So he didn't ask for a continuance to do that, did he? But at that time, the petitioner was not in a position to know that that would give the immigration judge a reason to deny his application. A respondent and also the immigration judge's burden to establish who he is, that's not the responsibility of the immigration judge. I mean, he has a burden of proof, too, does he not? Exactly. And, Your Honor, the page 361 may not show clearly the picture, but I'm pretty sure when petitioner turn in his asylum application, he attached a clear copy because this is the third generation copy. But he said... You're speculating about what? No, that's not a speculation. I'm pretty sure the government must be in a position of a clear copy of a petitioner's passport. Maybe that's why the government never question about petitioner's identity, because petitioner appear before the asylum interviewer, asylum officer. And at that time, he must have presented his original passport. So maybe that's why his identity was never an issue until the idea was in the first time in his decision. And then the reference to the 2002 marriage registration application, by the way, is on page 43 of the record. And it says that he has what is purportedly a marriage registration application issued to him on February 21st, 2002, contained a tab A of Exhibit 5. And I was just baffled by why he would have a marriage registration. Oh, OK, Your Honor, I understand what you're getting at. Although the marriage registration form was filled out in 1988, but he obtained the document, the copy, from the government office in 2002. Also, with respect to the passport, he kept saying that he didn't have it, and he had given it to the snake head, so he couldn't have gone to his house to get it. He didn't have it. He had, I guess, a one-page copy of it, but he didn't have the passport. I thought he said he left it at home. My understanding is he left the one-page copy at home, but he didn't have the passport. On page 91 of the administrative record, it says, right now, your passport is not with me, it's with one of my friends. No, it's his friend and not the smuggler? I mean, the story's kind of all over the board here at counsel. Isn't that the problem? What happens when there's adverse credibility claims? The circumstance regarding whether or not how he got into this country, I believe, according to the case law in this circuit, is not relevant. It does not show whether or not... It's relevant if it relates to concerns over whether this person is who he says he is. And the passport would certainly help establish his identification if he had a legitimate passport, which apparently he was unable to produce at the hearing. That's the relevancy. Okay, well, your time is up, so thank you very much for your argument, and I will be seeing you again later. Good morning. May it please the Court. Jan Redfern for the Respondent and the Attorney General. Your Honor, substantial evidence in this record supports the Immigration Judge's adverse credibility finding. The Immigration Judge here found that Petitioner's testimony was not candid, credible, or sincere. Some of what the IJ said really makes very little sense. Such as that he said that the officials came to him two or three hundred times, which is not what he said it was. Well, that's taken directly from the Petitioner's testimony. He testified they came two or three times per week, and he didn't end his testimony. So it's logical to conclude that they came... Yes, but he didn't say for five years. He said at the time this happened, which could have been for two months. He didn't say for five years they came two or three times a week. And his testimony, his very next testimony, was that the next thing that occurred was his wife accidentally got pregnant. So a reasonable fact finder could conclude that Petitioner, that the immigration official, I'm sorry, the family planning officials, visited two to three times per week for two years. But even if that weren't the case, for any length of time, his testimony was inconsistent. Because on the one hand, he tries to portray that the family planning officials came to his house two to three times per week in order to require his wife to get an IUD inserted. Yet apparently the officials gave up, which is inconsistent with testimony that they were trying to pressure her to get an IUD. It's also inconsistent with the country reports that state that family planning officials in some regions try to get a wife or a female who is in violation of the family planning policy to have an IUD inserted. The testimony is inconsistent with the country reports that state that most people who live in rural areas, where 70% of the population lives and where Petitioner lives, that an economic sanction is the remedy for violating the one-child policy. It's also inconsistent with country reports that state that IUD is required for couples who are not permitted to have another child and that quarterly medical exams are conducted to ensure that the IUD is in place and being properly used. But there's also, that's not the only evidence that the immigration relied on here to come up with an adverse credibility determination. The second one is, the second basis for the immigration judge's adverse credibility finding is Petitioner's testimony regarding why his wife did not go into hiding when she found out that she was pregnant for the second time. Again, Petitioner's testimony here on this point is internally inconsistent because he stated she didn't go into hiding because the house was relatively isolated and there's no one around them. But then he testified that there's nowhere to hide in China anyway, so they may as well stay home. And then he stated that although that apparently the house where the Petitioner and his wife lived was relatively isolated, she was seen out in public by other villagers who then turned her in for being pregnant. And it's also inconsistent with his testimony that family planning officials discovered that she was pregnant only after the villagers informed on her. If they had been visiting two to three times per week up until the time she was pregnant, they would have known that. He didn't say they were visiting two or three times a week up until the time she was pregnant. I mean, that's putting words in his mouth. He didn't say that. I mean, I agree that the piece about why he didn't go into hiding got confused. But even if, and accepting that is true, even if he testified two to three times per week and the court finds that perhaps that meant for one week or two weeks he didn't clarify, that's still inconsistent with testimony that the idea that the family planning officials would simply give up after Petitioner's wife... He also said that she had a health problem. Pardon me? He said she had a health problem, which might have been a reason. That she didn't feel well. No, he said she had a health problem. But she had a health problem. Well, he didn't clarify what the health problem was. He stated that she was not feeling well. But it's illogical that family planning officials who were that adamant on trying to have someone... The IJ also relied on the absence of any documents of the abortion, even though the records seem to demonstrate, the State Department reports seem to demonstrate that in general there aren't records of it. Well, and I don't think the immigration judge was looking for a certificate of an abortion. What was he looking for? Probably, most likely, an affidavit from the wife. A letter from the wife. Something from the wife indicated that she had this procedure done. There's nothing in the record, aside from Petitioner's incredible testimony, to support a conclusion that his wife underwent an abortion. There's also no evidence regarding his identity. The only identity, the only evidence in issue here is his passport. It was a one-page copy of a passport that was not legible. The picture was not related to the Petitioner. It didn't appear to be related to the Petitioner, that it wasn't his picture. And again, he gave inconsistent explanations as to where his passport was. At first he said, I gave it to the snake head. Then he said there was a copy of the one page that he gave to his friend. And then he stated, I don't even have anything else in the passport because I was in a hurry when I left and I didn't have it. So it's illogical. His testimony is internally inconsistent regarding his lack of corroboration with respect to his passport. There's other evidence that also... I thought he said that I gave the passport, that the snake head took the passport and refused to return to him after he asked for it. The snake head or the... I'm sorry. The smuggler. That's what he said, but he also stated that his friend at home made a copy of his passport. And that he didn't have the entire passport because he was in a hurry to leave, but he only had one page, one copy of one page of the passport. And his explanation was illogical, and the immigration judge here wasn't required to abandon common sense and find that his explanations, which were internally inconsistent,  I simply put, the petitioner here has failed to demonstrate that the evidence compels a conclusion, contrary to the immigration judge's finding, that he was not credible, and they failed to support his claim of persecution with credible evidence. If there are no further questions, the government would request that the court deny the petition for review. Thank you. In the case of Hwang v. Gonzalez is submitted, and we will go on to the next case of Hay v. Gonzalez.
judges: Thompson, Berzon, Tallman